**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ANTHONY AA PACE,**

**Plaintiff,**

    **vs.**                                 **5:22-cv-1211**
                                               **(MAD/ATB)**

**THE COUNTY OF CORTLAND; CORTLAND**
**COUNTY SHERIFFS OFFICE; MARK HELMS,**
_Cortland County Sheriff_**; CODY SANDY,** _County_
_Police Officer_**; DOMINIC CARACCI,** _County Police_
_Officer_**; AMBER MORSCH,** _County Police Officer_**;**
**DEAN STRICKLAND,** _County Police Officer_**;**
**KRISTIN ROCCO-PETRELLA,** _Cortlandville Town_
_Clerk_**; and JOHN DELVECCHIO,** _Attorney_**,**

**Defendants.**

_____

**APPEARANCES:**                          **OF COUNSEL:**

**ANTHONY AA PACE**
3143 Center Road
East Freetown, New York 13040
Plaintiff _pro se_

**KENNEY SHELTON LIPTAK NOWAK, LLP**    **DANIEL CARTWRIGHT, ESQ.**
4615 North Street                              **DAVID H. WALSH, IV, ESQ.**
Jamesville, New York 13078
Attorneys for the County Defendants

**LIPPMAN O'CONNOR**                          **GERARD E. O'CONNOR, ESQ.**
43 Court Street
Suite 600
Buffalo, New York 14202
Attorneys for Defendants Rocco-Petrella and
DelVecchio

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On November 17, 2022, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution. *See* Dkt. No. 1. On February 15, 2023, Plaintiff filed an amended complaint. *See* Dkt. No. 18.

Currently before the Court are Defendants' motions to dismiss and Plaintiff's cross motion to file a second amended complaint. *See* Dkt. Nos. 22, 30, 34.

## II. BACKGROUND

According to the amended complaint, on Monday, November 18, 2019, at approximately 2:00 p.m., Plaintiff, "an ordained Minister, YouTube blogger and journalist was attending vehicle and traffic court in Cortlandville Town Court." Dkt. No. 18 at ¶ 16. The Raymond G. Thorpe Municipal Building is a multi-purpose building, separated into two separate distinct sections: one being the Cortlandville Town Hall and the other is the Cortlandville Town Court. *See id.* at ¶¶ 17-18.

Upon entering the Raymond G. Thorpe Municipal Building, Plaintiff was searched by the security staff outside the courtroom. *See id.* at ¶ 19. Once through security, Plaintiff checked in with the Cortlandville Court Clerk and then existed the courtroom. *See id.*

"After exiting the Town Court, ending the first consensual encounter with the County Police Officers, [Plaintiff] proceeded to continue his lawful business inside the Cortlandville Town Hall." *Id.* at ¶ 20. Plaintiff claims that he "noticed a women [sic] sitting behind a computer monitor at a counter, facing out to the lobby area and began a video interview of the public employee." *Id.* at ¶ 21. As Plaintiff approached this employee, later determined to be Valerie Hall, "he noticed a sign near a door that said assessor." *Id.* at ¶ 22. Plaintiff then asked Ms. Hall

"who do you assess?" *Id.*  Ms. Hall began to answer Plaintiff, but "stopped because of the violent screaming of the County Police Officers." *Id.*

Plaintiff claims that "[w]hat should have been a second consensual encounter with County Police Officer Caracci and County Police Officer Sandy and a level 1 on a standard Use of Force Module was anything but." Dkt. No. 18 at ¶ 23.  Plaintiff alleges that instead of following standard protocols and procedures, "County Police Officer Caracci screamed at [him] to 'Leave the building now or be arrested for trespassing!'" *Id.* at ¶ 24.  Plaintiff claims that he calmly responded to Officer Caracci by informing him that it is a public building and that he was there "conducting lawful business inside the town hall." *Id.*  At this point, Plaintiff alleges that Officer Caracci instructed him to turn around and face the wall.  *See id.* at ¶ 25.  Plaintiff, "fearing serious bodily harm or death from the obviously unstable County Police Officer Caracci immediately complied and turned to face a wall." *Id.*  At this point, Plaintiff alleges that he was handcuffed by Officer Sandy and placed under arrest.  *See id.* at ¶ 28.  Plaintiff claims that this "was done in bad faith, maliciously, without probable cause, nor any reasonable articulable suspicion of a crime." *Id.*

Plaintiff also alleges that his rights were violated on September 11, 2016, when Officers Sandy and Strickland responded to his home after a neighbor had made a noise complaint.  *See id.* at ¶¶ 32-33.  Plaintiff fails to provide any additional facts regarding this incident.

In his first cause of action, Plaintiff alleges that Defendants Cortland County, Caracci, Sandy, and Rocco-Petrella unlawfully retaliated against him in violation of the First Amendment. *See* Dkt. No. 18 at ¶¶ 36-41.  In his second cause of action, Plaintiff alleges that Defendants Caracci and Sandy subjected him to false arrest, unreasonable search and seizure of his person, and "the loss of his physical liberty without probable cause" all in violation of the Fourth and

Fourteenth Amendments.  *See id.* at ¶¶ 42-46.  In his third cause of action, Plaintiff alleges that

Defendants Caracci, Sandy, and Rocco-Petrella subjected him to malicious prosecution in

violation of the Fourteenth Amendment.  *See id.* at ¶¶ 47-53.  In his fourth cause of action,

Plaintiff alleges that Defendant Sandy failed to intervene when he was subjected to excessive

force, malicious prosecution, and abuse of process in violation of the Fourth and Fourteenth

Amendments.  *See id.* at ¶¶ 54-62.  In his fifth and sixth causes of action, Plaintiff alleges state

law claims of tampering with public records, official misconduct, and negligent training, hiring,

retention, and supervision against Defendants Rocco-Petrella, DelVecchio, Helms, Morsch, and

Cortland County.  *See id.* at ¶¶ 63-78.  Finally, in his seventh cause of action, Plaintiff alleges that

Defendants Sandy and Strickland violated his rights under the Fourth and Fourteenth

Amendments when they responded to his home on September 11, 2016.  *See id.* at ¶¶ 79-86.


## III. DISCUSSION

### A.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal

sufficiency of the party's claim for relief.  *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir.

2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-

pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This

presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009) (citation omitted).  Although a court's review of a motion to dismiss is

generally limited to the facts presented in the pleading, the court may consider documents that are

"integral" to that pleading, even if they are neither physically attached to, nor incorporated by

reference into, the pleading.  *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)

(quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the

claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled

to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citation omitted).  Under this

standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the

speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on

[their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of the

'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations

in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S.

at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to

plausible, the [] complaint must be dismissed[,]" *id.* at 570.

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than

that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289,

295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations

omitted).  The Second Circuit has held that the court is obligated to "make reasonable allowances

to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a

legal education.  *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

**B.**     **Failure to Oppose the County Defendants' Motion**

As the County Defendants note, Plaintiff failed to file an opposition to their motion to dismiss.  *See* Dkt. No. 37.  At the time Plaintiff filed his complaint, he was provided with the *Pro Se Handbook* and the standard notice given to all *pro se* litigants in this District.  *See* Dkt. No. 5. In the standard notice, *pro se* litigants are provided with the following reminder: "If your opponent files a motion and you fail to oppose it, and the moving party has met its burden, the Court may consider your failure to oppose the motion as your consent to the relief requested in that motion." *Id.* at 2 (citing N.D.N.Y. L.R. 7.1(a)(3)).  In addition, on March 23, 2023, the County Defendants served on Plaintiff the standard form advising him of the need to respond to the motion to dismiss, which repeated the consequences of failing to respond.  *See* Dkt. No. 32.

A *pro se* plaintiff's pleadings should be read to raise the strongest arguments they suggest, *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007), but *pro se* status does not excuse a plaintiff from compliance with the pleading standards of the Federal Rules of Civil Procedure.  Nor does the latitude accorded a *pro se* litigant excuse him from meeting the requirements necessary to respond to dispositive motions, or from meeting deadlines set by the Court to file opposition.  *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003); *Hamlett v. Srivastava*, 496 F. Supp. 2d 325, 328 (S.D.N.Y. 2007).  When a plaintiff fails to respond to a motion to dismiss, the Court, in its discretion, may consider the motion unopposed and deem the underlying claims abandoned.  *See Johnson v. Commissioner of Soc. Sec.*, 519 F. Supp. 2d 448, 449 (S.D.N.Y. 2007) (citing *In re Refco Capital Mkts., Ltd. Brokerage Cust. Secs. Litig.*, No. 06 Civ. 643, 2007 WL 2694469, *6 (S.D.N.Y. Sept. 13, 2007)).

In the present matter, the County Defendants are correct that Plaintiff failed to formally oppose their motion to dismiss.  However, Plaintiff did file a motion to file a second amended

complaint in which he is clearly attempting to allege facts in response to the arguments raised in the motion.  *See* Dkt. No. 34.  In light of his *pro se* status, the Court will consider the merits of the arguments raised in the pending motions to dismiss, affording Plaintiff the special solicitude due to *pro se* litigants.

**C.     Claims Against Defendants Rocco-Petrella and DelVecchio**

In several of his causes of action, Plaintiff names Defendants Rocco-Petrella and DelVecchio.  However, Plaintiff fails to include any factual allegations about these two Defendants in his amended complaint.  Accordingly, the Court finds that Plaintiff has failed to plausibly allege that these individuals were personally involved in the alleged constitutional violations.  As such, the Court grants Defendants Rocco-Petrella's and DelVecchio's motion to dismiss.[1]

**D.     Claims Against County Administrative Offices and Official Capacity Claims**

In his amended complaint, Plaintiff has named Cortland County as a Defendant, along with the Cortland County Sheriffs Department and its employees acting in their official capacities.  "'Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.'"  *Zennamo v. County of Oneida*, No. 6:21-cv-840, 2022 WL 4328346, *3 (N.D.N.Y. Sept. 19, 2022) (quoting *Rose v. County of Nassau*, 904 F. Supp. 2d 244, 247 (E.D.N.Y. 2012)).  Similarly, it is well established that a Section 1983 suit against a municipal officer in his or her official capacity is treated as an action against the municipality itself.  *See Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 687 (2d Cir. 2005).

---

[1] Additionally, the Court notes that in his response to the motion to dismiss filed by Defendants Rocco-Petrella and DelVecchio, Plaintiff discontinues all claims alleged against Defendant DelVecchio and all state law claims against both of these Defendants as time barred.

Accordingly, the Court grants the County Defendants' motion to dismiss the Cortland County Sheriffs Department and the claims against the individual Defendants in their official capacities.

**E.    Personal Involvement**

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under [Section] 1983, a plaintiff must show ... the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  To establish personal involvement, a plaintiff must plead that "'each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676).

In the present matter, the Court finds that, with exception of Defendants Caracci and Sandy, Plaintiff has failed to allege that the named Defendants were personally involved in the alleged constitutional violations.  While Plaintiff alleges that Defendants Caracci and Sandy arrested Plaintiff without probable cause and in retaliation for engaging in First Amendment protected activity, Plaintiff fails to provide anything other than conclusory allegations as to the other named Defendants.  In fact, it is not entirely clear from the complaint or amended complaint if these other named individuals were even present during the alleged constitutional violations.

Accordingly, the Court grants the County Defendants' motion to dismiss as to Defendants Morsch, Strickland, and Helms for lack of personal involvement.

**F.    September 11, 2016 Incident**

Plaintiff alleges that Defendants Sandy and Strickland violated his rights on September 11, 2016, when they responded to his home following a noise complaint from a neighbor.  *See* Dkt. No. 18 at ¶¶ 31-35, 79-86.  Claims brought pursuant to Section 1983 in New York are

governed by a three-year statute of limitations.  *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir.

2013); *See also Sant v. Stephens*, 821 Fed. Appx. 42, 44-45 (2d Cir. 2020) (citations omitted).

"'While state law supplies the statute of limitations for claims under [section] 1983, federal law

determines when a federal claim accrues.  The claim accrues when the plaintiff knows or has

reason to know of the harm.'" *Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001) (quotation

omitted).

   Plaintiff's claim relating to the incident on September 11, 2016 is clearly untimely.

Plaintiff knew of or had reason to know of any alleged violation when the Defendants Sandy and

Strickland responded to his residence on that day.  Plaintiff's complaint in this matter was filed on

November 17, 2022, more than three-years after the statute of limitations had expired.

   Accordingly, Plaintiff's claim relating to the September 11, 2016 incident, is dismissed.

## G. First Amendment Retaliation

   In his first cause of action, Plaintiff alleges that Defendants Cortland County, Caracci,

Sandy, and Rocco-Petrella retaliated against him in violation of the First Amendment.  *See* Dkt.

No. 18 at ¶¶ 36-41.  In their motion, the County Defendants contend that Plaintiff's recording in

the Town's municipal building is undeserving of First Amendment protection and, therefore, this

claim must be dismissed.  *See* Dkt. No. 30-1 at 18.

   To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right

protected by the First Amendment; (2) the defendant's actions were motivated or substantially

caused by his exercise of that right; and (3) the defendant's actions caused him some injury.  *See*

*Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).  A plaintiff may plead injury either

by showing that his speech has been adversely affected by government retaliation or that he has

suffered some other concrete, non-speech related harm.  *See Dorsett v. Cty. of Nassau*, 732 F.3d

157, 160 (2d Cir. 2013) (noting that a loss of a government contract, additional scrutiny at border crossings, revocation of building permits, and refusal to enforce zoning laws are all adequate cognizable harms even in the absence of a chilling effect).

Whether the First Amendment protects particular speech requires the Court to consider "the nature of the forum in which the speaker's speech is restricted." *Huminski v. Corsones*, 396 F.3d 53, 89 (2d Cir. 2004).  "The category of the forum determines the appropriate test for weighing 'the Government's interest in limiting the use of its property to its intended purpose [against] the interest of those wishing to use the property for other purposes.'" *Huminski v. Corsones*, 396 F.3d 53, 89 (2d Cir. 2005) (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 800 (1985)).  "Supreme Court and Second Circuit precedent are clear that a courthouse is a non-public forum." *Washpon v. Parr*, 561 F. Supp. 2d 394, 409 (S.D.N.Y. 2008) (citing *United States v. Grace*, 461 U.S. 171, 178 (1983)) (other citation omitted); *see also Huminski*, 396 F.3d at 90-91 ("The function of a courthouse and its courtrooms is principally to facilitate the smooth operation of a government's judicial functions. ... These purposes are likely to be incompatible with expressive activities inside a courthouse").  And it is a forum that extends to "court lands." *Huminski*, 396 F.3d at 90 (holding that "courthouses, court lands, and parking lots" used by the courthouse are nonpublic fora, but not public sidewalks, streets, or parks adjacent to such courthouses).  In such nonpublic fora, "governmental restrictions on expressive conduct or speech are constitutional so long as they are reasonable in light of the use to which the forum is dedicated and 'are not an effort to suppress expression merely because public officials oppose the speaker's view.'" *Id.* (quoting *Cornelius*, 473 U.S. at 800).

In the present matter, Plaintiff's First Amendment claim is based on the fact that he was not permitted to use his cellular telephone while in the Cortlandville Town Court and directly

10

outside of the courtroom.  The Administrative Rules of the New York State Unified Court System

state, in relevant part, as follows:

> Taking photographs, films or videotapes, or audiotaping,
> broadcasting or telecasting, in a courthouse including any
> courtroom, office or hallway thereof, at any time or on any
> occasion, whether or not the court is in session, is forbidden, unless
> permission of the Chief Administrator of the Courts or a designee of
> the Chief Administrator is first obtained.

22 N.Y.C.R.R. § 29.1(a).  Additionally, on the courtroom door a sign stated "Town Court Enter

Here" and "Please No weapons, cell phones or electronic devices permitted in the Court Room."

Dkt. No. 1 at ¶¶ 28-29.  Moreover, pursuant to the Cortland County Sheriff's Office policy

establishing guidelines and instructions for officers assigned to the security of judicial courts

within Cortland County, "[u]nless otherwise directed by the presiding judge, all electronic devices

are prohibited except cellular telephones which must be turned off while in the courtroom." Dkt.

No. 30-2 at 19.  This policy also instructs that court officers shall not "[a]llow the use of

electronic devices in the courtroom without permission from the presiding judge." *Id.* at 21.

These rules are viewpoint neutral and reasonable considering the function of a courthouse.

*See Leibovitz v. Barry*, No. 15-cv-1722, 2016 WL 5107064, *7 (E.D.N.Y. Sept. 20, 2016).

Plaintiff does not claim that he requested or received permission to record video inside the court

or the building.  Indeed, Plaintiff was told to leave the courtroom and then the municipal building

only after multiple warnings about his cell phone use, with which he refused to comply.  *See id.*

(dismissing the plaintiff's First Amendment claim where the plaintiff failed to allege that he

requested or received permission to record video inside the Queens Civil Court and where the

"phone was only confiscated after he refused to leave the court's fourth floor hallway and

disregarded multiple orders to cease recording video on his smartphone") (citations omitted); *see*

*also Washpon v. Parr*, 561 F. Supp. 2d 394, 408-09 (S.D.N.Y. 2008) (dismissing the plaintiff's First Amendment retaliation claim where the plaintiff admittedly refused to pass through the court's security and refused to comply with the officers' directives that she leave the building, which ultimately led to the plaintiff's arrest); *Remy v. Beneri*, No. 09-cv-4444, 2011 WL 5546237, *8 (E.D.N.Y. Nov. 9, 2011) (dismissing the plaintiff's First Amendment claim, finding that any restrictions on the plaintiff's expression were reasonable in light of the fact that the support magistrate had adjourned the hearing and the plaintiff failed to obey the order to leave the courtroom). Because Plaintiff had no First Amendment right to record video inside the courthouse, his First Amendment claim must be dismissed.[2]

Liberally construed, Plaintiff also could be attempting to allege that he was in a public place for a lawful purpose and, therefore, his removal from the courthouse/municipal building

---

[2] As limited by his amended complaint, Plaintiff claimed he entered the Town municipal building (which houses the Town court and Town hall), went through security, checked in with the court clerk, and then went in to the Town court where he had his first consensual encounter with law enforcement. *See* Dkt. No. 18 at ¶¶ 17-20. Omitted from the amended complaint (but originally included in the complaint) are any allegations pertaining to why Plaintiff was in court that day, or the court's policies prohibiting cell phone usage in the courtroom, Plaintiff's actual or perceived disregard of the policy, his being asked to leave the courtroom for failure to follow the cell phone usage policy, and upon exiting the court, his taking a photograph of a "sticker" on the courtroom door containing the cell phone usage policy. *See* Dkt. No. 1 at ¶¶ 28-39. Also omitted from the amended complaint (but included in the original complaint) are any allegations regarding Plaintiff's belief that the court's cell phone policy was an unenforceable sham policy unrooted in any law that Defendants created "for their own made up fantasy." *Id.* at ¶¶ 40-43. Plaintiff also admitted in his original complaint that he took video of Defendant Rocco-Petrella after exiting the courtroom, *see id.* at ¶¶ 44-51, and acknowledges in his amended complaint that he then "began a video interview" with another female employee of the Town. *See* Dkt. No. 18 at ¶ 21. In deciding the motion to dismiss, the Court is permitted to consider allegations that are contradicted by Plaintiff's original complaint and also the fact that Plaintiff is attempting to manipulate his allegations to avoid dismissal. *See Colliton v. Cravath, Swaine & Moore LLP*, No. 08-cv-400, 2008 WL 4386764, *6 (S.D.N.Y. Sept. 24, 2008) (holding that when the "'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss ... [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true'") (quotation omitted).

violated his First Amendment rights.  However, the Second Circuit and Supreme Court have made clear that "the First Amendment protects conduct only if it has an expressive purpose." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (citing *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 n.5 (1984); *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 205 (2d Cir. 2004)) (other citations omitted); *see also Doe v. City of Lafayette*, 377 F.3d 757, 764 (7th Cir. 2004) (*en banc*) (stating that the plaintiff's prohibition from park triggers First Amendment scrutiny only if his conduct "was infused with an expressive element").  Here, Plaintiff has not alleged that he was engaged in any expressive conduct when he was arrested.

Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiff's First Amendment claim.

**H.      Plaintiff's Second, Third, and Fourth Causes of Action**

Plaintiff's second, third, and fourth causes of action consist of alleged violations of the Fourth and Fourteenth Amendments, along with the New York Constitution, for unreasonable search and seizure, malicious prosecution, false arrest, and excessive force.

### *1. False Arrest*

To adequately plead a false arrest claim under Section 1983 (as well as under New York state law), a plaintiff must show that "'(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.'" *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quotation omitted).  "'The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under [New York] law or under § 1983.'" *Kilburn v. Vill. of Saranac Lake*, 413 Fed. Appx. 362,

363 (2d Cir. 2011) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  Probable cause to arrest exists "when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

In evaluating the existence of probable cause, the court must look to the "totality of the circumstances," *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002), and consider the "facts available to the officer at the time of arrest." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (citations omitted).  Furthermore, the court's "assessment as to whether probable cause existed at the time of the arrest is to be made on the basis of the collective knowledge of the police, rather than on that of the arresting officer alone." *Husbands ex rel. Forde v. City of New York*, 335 Fed. Appx. 124, 127 (2d Cir. 2009); *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (noting that in making a probable cause determination, police officers are "entitled to rely on the allegations of fellow police officers").  Under Second Circuit case law, a false arrest claim "turns on whether probable cause existed to arrest for any crime, not whether probable cause existed with respect to each individual charge." *Marcavage v. City of New York*, 689 F.3d 98, 109 (2d Cir. 2012).

In this case, Plaintiff was charged with trespass, in violation of New York Penal Law § 140.05.  The information was submitted by Defendant Caracci.  *See* Dkt. No. 30-2 at 15.  According to Plaintiff's notice of claim, the charge was dismissed on June 17, 2020, when the district attorney's office informed the presiding judge that they are declining to prosecute the case.  *See* Dkt. No. 30-2 at 24.  Defendants contend that probable cause existed at the time of his arrest and that this claim must be dismissed.  The Court agrees.

14

Pursuant to  New York Penal Law § 140.05, "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."  Where, as here, the alleged trespass occurred on premises generally open to the public, the government "has the burden of proving three elements to support a prima facie case of criminal trespass: (1) that a lawful order excluding the defendant from the premises was issued, (2) that the order was communicated to the defendant by a person with authority to make the order, and (3) that the defendant defied that order." *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013) (citation omitted).

In his complaint and amended complaint, Plaintiff admits that he was using his cellular telephone in violation of the Town court's policy, that was both placed on the doorway to the courtroom and announced by Defendant Caracci to those in the courtroom.  When Defendant Caracci noticed that Plaintiff was still using his phone inside the courtroom, he ordered Plaintiff to turn off the phone.  *See* Dkt. No. 1 at ¶¶ 29-31.  Once outside the courtroom, Plaintiff continued to use his phone to take pictures and record videos of employees within the municipal building.  When he was again instructed to stop using his phone, Plaintiff refused and Defendants repeatedly told him that he would be forced to leave if he continued such actions.  Additionally, Defendants instructed him that he would be arrested for trespassing several times if he continued engaging in the conduct.  When Plaintiff continued recording video on his phone despite being told to leave, he was arrested and charged with trespass.  These facts are supported not only by the complaint and amended complaint, but also by the supporting depositions of Defendants

Sandy and Caracci, as well as the witness statements of Valerie Hall, Defendant Rocco-Petrella, and Amanda Rainbow.  *See* Dkt. No. 30-2 at 8-14.[3]

Based on the facts presented in Plaintiff's complaint and amended complaint, along with the supporting depositions mentioned above, the Court finds that probable cause existed to arrest Plaintiff for trespass and, therefore, the false arrest claim must be dismissed.  *See People v. Bembry*, 128 Misc. 2d 243 (Utica City Ct. 1985) (holding that the right to use public building is not absolute, and a person can be found guilty of trespass upon entering public building under certain circumstances; although a person cannot be excluded from public building indefinitely, law enforcement officers have authority to direct persons to leave public building when causing disturbances therein, and failure to obey such reasonable orders may result in trespass conviction).  ***2. Malicious Prosecution***

A malicious prosecution claim implicates the Fourth Amendment right "to be free of unreasonable seizure of the person." *Singer v. Fulton Cty. Sherriff*, 63 F.3d 110, 116 (2d Cir. 1995).  To succeed on a claim of malicious prosecution, the plaintiff "must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." *Id.* at 117.  State law provides the elements of a § 1983 claim for malicious prosecution.  Under New York law, plaintiff must plausibly allege that "'(1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice[,] and[ ] (4) the matter terminated in plaintiff's favor.'" *Rentas v. Ruffin*,

---

[3] The Court may consider the supporting depositions in deciding this motion to dismiss because Plaintiff makes reference to these documents in his complaint and amended complaint. *See LaLumia v. Sutton*, No. 1:13-cv-1012, 2013 WL 6566064, *3 n.4 (N.D.N.Y. Dec. 13, 2013) (citation omitted).  Additionally, in his cross motion to amend the amended complaint, Plaintiff relies on these documents extensively, rendering them integral to the proposed second amended complaint.  *See* Dkt. No. 34.

816 F.3d 214, 220 (2d Cir. 2016) (quotation and other citation omitted).  As with claims of false arrest, probable cause is a complete defense to malicious prosecution claims.  *See Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2003).

In the present matter, as discussed above, Plaintiff's claim for malicious prosecution is subject to dismissal because there was probable cause to prosecute Plaintiff for the violation of trespass.  "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis*, 221 Fed. Appx. 48, 50 (2d Cir. 2007) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).  Here, Plaintiff has failed to plausibly allege that the probable cause to arrest him was vitiated by an intervening fact or fraud.  As such, this claim is subject to dismissal.

Additionally, aside from Defendant Caracci who filed the criminal information, Plaintiff has failed to plausibly allege that the named Defendant initiated a prosecution against him.  In "malicious prosecution cases against police officers, plaintiffs have met this first element by showing that officers brought formal charges and had the person arraigned[.]" *Llerando–Phipps v. City of New York*, 390 F. Supp. 2d 372, 382 (S.D.N.Y. 2005) (citations omitted); *see also Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010) ("Under New York law, police officers can 'initiate' prosecution by filing charges or other accusatory instruments"); *Ricciuti*, 124 F.3d at 130 ("[A] jury could clearly find that [the defendant police officer] started the assault prosecution because no one disputes that he started the prosecution by filing the charges of second-degree assault").  By contrast, "a plaintiff usually cannot show arresting officers initiated a criminal proceeding against him solely based on an arrest, unless false information provided by the officer 'influences a decision whether to prosecute[.]'" *Levy v. City of New York*, 935 F. Supp. 2d 575, 588-89 (E.D.N.Y. 2013) (quotation omitted).  For laypersons who are defendants in cases

17

of malicious prosecution, courts have held that simply reporting a crime to the police and serving as a witness does not meet the first element of initiating a criminal proceeding. *See Rohman v. New York City Transit Auth.*, 215 F.3d 208, 217 (2d Cir. 2000) (citing *DeFilippo v. County of Nassau*, 183 A.D.2d 695 (2d Dep't 1992)).

Here, Defendant Sandy is only alleged to have been a witness to the underlying events and assisted in arresting Plaintiff, which is insufficient to plausibly allege that he initiated the prosecution against him. Additionally, Defendant Rocco-Petrella, who is a layperson, simply filed a witness statement with police, which is insufficient to meet this first element.

Accordingly, the Court grants Defendants' motions to dismiss as to Plaintiff's malicious prosecution claim.

### 3. Search and Seizure and Excessive Force

In his second cause of action, Plaintiff alleges that Defendants "subject[ed] him to an unreasonable search and seizure of his person ... without probable cause." Dkt. No. 18 at ¶ 44. Similarly, in his fourth cause of action, Plaintiff contends that he was subjected to "excessive use of force." *Id.* at ¶ 57. Plaintiff provides no facts supporting these claims in either his original or amended complaint. Such conclusory, boilerplate allegations are insufficient to plausibly allege these claims.

Accordingly, the Court grants Defendants' motions to dismiss as to these claims.

## I.    Failure to Intervene

Plaintiff also alleges that Defendant Sandy failed to intervene to prevent the alleged violations to his constitutional rights. However, Plaintiff's failure to intervene claim must be dismissed since his he has failed to adequately plead an underlying constitutional violation. *See*

*Leibovitz*, 2016 WL 5107064, at \*14 (citing cases).  Accordingly, Defendants' motion to dismiss as to this claim is granted.

**J.      State-Law Claims**

A district court may decline to exercise supplemental jurisdiction where "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(a).  When "a plaintiff's federal claims are dismissed before trial, 'the state claims should be dismissed as well.'" *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2010) (quoting *Cave v. E Meadow Union Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008)); *accord Vaughn v. Phx. House N.Y., Inc.*, 957 F.3d 141, 146 (2d Cir. 2020) ("Because the District Court properly dismissed [the federal] claims, the only claims over which it had original jurisdiction, it did not abuse its discretion by declining to exercise supplemental jurisdiction over his [state law] claims").

Here, because the Court has dismissed all of Plaintiff's federal claims and considering the early stage of this litigation, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims.

**K.      Plaintiff's Motion to Amend the Amended Complaint**

*1. Standard*

According to Rule 15 of the Federal Rules of Civil Procedure, since more than twenty-one days have elapsed since service of the complaint, "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  However, leave will only be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  An

amendment of a pleading is considered "futile" when the proposed new claim would not

withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *See*

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).

### 2. Claims Raised in Previous Complaints

As the County Defendants notes, Plaintiff's proposed second amended complaint provides

no additional factual allegations that would change the Court's analysis as set forth above

regarding the claims included in the amended complaint.  Rather, Plaintiff simply provides minor

changes to the facts surrounding the events at issue and otherwise contradicts the allegations

previously alleged.[4]  Accordingly, as to the causes of action included in his amended complaint,

the Court finds that permitting Plaintiff a second opportunity to amend his complaint would be

futile.

### 3. New Claims

#### a. Equal Protection

In his proposed second amended complaint, Plaintiff appears to be attempting to allege an

Equal Protection claim.  *See* Dkt. No. 34 at ¶ 89.

"The Equal Protection Clause requires that the government treat all similarly situated

people alike." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  "Although the prototypical

equal protection claim involves discrimination against people based on their membership in a

---

[4] For example, in his proposed second amended complaint, Plaintiff initially denies that he
used his cellular telephone after he was informed that it needed to be turned off while in court.
Plaintiff claims that while walking around the town hall, he was "not taking photographs and
video of anything in plain site." Dkt. No. 34 at ¶ 34.  However, attached to the County
Defendants' motion to dismiss is a video that Plaintiff took (and acknowledges taking) while he
was addressing Defendant Rocco-Petrella while she was at her desk inside the town hall.  *See*
Dkt. No. 34 at ¶¶ 39-43, 49-53.

vulnerable class, [courts have] long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Id.*  As is the case here, "[a] plaintiff who does not claim to be a member of a constitutionally protected class may bring an Equal Protection claim on one of two theories: selective enforcement or 'class of one.'" *Komondy v. Gioco*, 253 F. Supp. 3d 430, 440 (D. Conn. 2017) (citing *Cobb v. Pozzi*, 363 F.3d 89, 109-10 (2d Cir. 2004)).

      "To prevail on [a selective enforcement] claim, a plaintiff must prove that '(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.'" *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quotation omitted).  To prevail on a class-of-one claim, a plaintiff must prove that "'[1] that [ ]he has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment.'" *Id.* (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  A plaintiff asserting a selective enforcement or class-of-one claim must present evidence of similarly situated comparators.  *See Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004) ("A selective enforcement claim requires, as a threshold matter, a showing that the plaintiff was treated differently compared to others similarly situated") (citing *Giordano v. City of New York*, 274 F.3d 740, 750-51 (2d Cir. 2001)); *see also King v. N.Y. State Div. of Parole*, 260 Fed. Appx. 375, 380 (2d Cir. 2008) (affirming dismissal of class of one claim because the plaintiff "failed to identify a single individual with whom he can be compared for Equal Protection purposes"); *Hunter v. City of New York*, 35 F. Supp. 3d 310, 328 (E.D.N.Y. 2014) (holding that the plaintiff's allegations were insufficient to state a selective

enforcement or class-of-one claim based on his arrest because he had not pled facts showing the defendants treated him differently based on impermissible considerations or that the proposed comparator, who was not arrested, was similarly situated).

In the present matter, the Court finds that the proposed second amended complaint (or either of the two previous complaints) fails to plausibly state an Equal Protection claim under either theory. Significantly, Plaintiff has failed to allege that others both inside and immediately outside the courtroom who were using their cellular telephones in violation of the policies set forth above were treated differently than him. Because Plaintiff has failed to allege that he was treated differently than anyone else similarly situated, permitting amendment to include an Equal Protection claim would be futile.

### b. Substantive Due Process

Liberally construed, Plaintiff is attempting to allege a substantive due process claim in his proposed second amended complaint.

"[N]ot all wrongs perpetrated by a government actor violate due process." *Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*, 298 F.3d 168, 173 (2d Cir. 2002). To survive a Rule 12(b)(6) motion, a substantive due process claim "must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quotation omitted). This "shocks the conscience" test is "necessarily imprecise," *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005), but because "[s]ubstantive due process is an outer limit on the legitimacy of governmental action[,] ... [s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

In the present matter, Plaintiff's proposed second amended complaint fails to set forth any conduct by Defendants that is sufficient to support a substantive due process claim.  Further, the facts necessary to support this claim are the same facts used to support Plaintiff's claims for other alleged violations of specific constitutional provisions.  As such, the claim would fail on this alternative basis.  *See Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir.2000) ("'[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process'") (quoting *Conn v. Gabbert*, 526 U.S. 286, 293 (1999)).

Accordingly, the Court denies Plaintiff's motion to file a second amended complaint.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendants DelVecchio and Rocco-Petrella's motion to dismiss (Dkt. No. 22) is **GRANTED**; and the Court further

**ORDERS** that the County Defendants' motion to dismiss (Dkt. No. 30) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion to file a second amended complaint (Dkt. No. 34) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 7, 2023
      Albany, New York

Mae A. D'Agostino
U.S. District Judge

24